# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRIENDS OF MAYANOT INSTITUTE, INC.,
C/O Asher Perlin, 4600 Sheridan Street,
Suite 303, Hollywood, Florida 33021

                    Plaintiff,

                                  Civil Action No.   1:16-cv-1436

vs.

ISLAMIC REPUBLIC OF IRAN,
c/o Ministry of Foreign Affairs         JURY TRIAL DEMANDED
Tehran, Iran

                    Defendant.
_____/

## COMPLAINT

Plaintiff, Friends of Mayanot Institute, Inc. ("Plaintiff" or "Mayanot") alleges the following:

## INTRODUCTION

1. This is a civil action brought pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* seeking damages for reasonably foreseeable property loss resulting from a prolonged terror attack by the Iranian-sponsored Hezbollah terrorist organization spanning from July 12, 2006 through August 14, 2006, during which Hezbollah launched thousands of rockets and missiles at civilian targets throughout Israel (the "Hezbollah Attack").

2. The Islamic Republic of Iran ("Defendant" or "Iran") is a state sponsor of terrorism that has been found liable by United States courts for providing material support and resources that caused, enabled and facilitated the Hezbollah Attack. *See e.g. Kaplan v.*

*Central Bank of the Islamic Republic of Iran*, 55 F. Supp. 3d 189, 197 (D.D.C. 2014) (concluding that "this whole thing [the Hezbollah Attack] was financed by Iran.").

3. Plaintiff, Mayanot, suffered severe financial injuries as a direct result of the Hezbollah Attack.

## THE PARTIES

4. Mayanot is a New York not-for-profit corporation that, for nearly twenty years, has been conducting various experiential learning and leadership training programs in Israel.

5. Among other things, Mayanot operates a yeshiva (religious academy) for men, a women's study program, a summer study program, and heritage travel programs, the latter in conjunction with Birthright Israel, an American organization that finances tours in Israel by young Jewish men and women.

6. During, and in the aftermath of, the Hezbollah Attack, enrollment and participation in Mayanot programs declined precipitously.

7. American and other students withdrew from the Yeshiva, the women's program, the summer program, and cancelled future plans to attend.

8. Approximately half of the Birthright Israel participants cancelled their trips.

9. The financial damage to Mayanot in lost tuition, fees, and grants for all of these programs was nearly ruinous.

10. Thus, as a direct result of the Hezbollah Attack which was perpetrated with material support and resources provided by Iran, Mayanot suffered substantial property losses.

11. Defendant The Islamic Republic of Iran ("Iran"), through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the other

defendants herein, provided Hezbollah with material support and resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and caused the Hezbollah Attack.

12. Defendant Iran is a foreign state within the meaning of 28 U.S.C. § 1603, and has been continuously designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)) since 1984.

## SUBJECT MATTER JURISDICTION

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330(a), 1331, and 1605A(a).

## PERSONAL JURISDICTION

14. This Court has personal jurisdiction over the defendant because, as explained below, Iran's actions caused, enabled, and facilitated the Hezbollah Attack. Furthermore, and pursuant to 28 U.S.C. § 1330(b), personal jurisdiction exists because this Court has subject matter jurisdiction under 28 U.S.C. § 1330(a) and service shall be made under 28 U.S.C. §1608.

## VENUE

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f) because the action is brought against a foreign state.

## GENERAL ALLEGATIONS

**A.    Iran Provided Material Support and Resources to Hezbollah.**

16. Since 1979 and during the period relevant to this suit it has been the continuous and

official policy and goal of Iran:

    a. To weaken, harm and undermine the United States militarily, economically and politically;

    b. To bring about and cause the eradication of the State of Israel, the closest ally of the United States in the Middle East, and its replacement with an Islamic state; and

    c. To bring about and cause the murder and/or expulsion of the Jewish residents of the State of Israel.

17.    Since 1979 and during the period relevant to this suit, it has been the continuous and official policy of Iran to use terrorism to achieve Iran's policies and goals described above. Specifically, since 1979 and during the period relevant to this suit, it has been the continuous and official policy of Iran to use terrorism (a) to intimidate and influence the United States government and public and thereby to weaken, harm and undermine the United States militarily, economically and politically and (b) to intimidate and influence the Israeli government and public and thereby to bring about the eventual eradication of the State of Israel and its replacement with an Islamic state and the murder and/or expulsion of the Jewish residents of the State of Israel.

18.    In order to carry out and achieve Iran's policies and goals using terrorism, Iran established the Hezbollah terrorist organization in 1982.

19.    Since 1982 and until the present day, Hezbollah has been controlled, funded and operated by Iran. Since 1982 and until the present day, Iran has used Hezbollah to carry out thousands of terrorist attacks against American and Israeli targets, in which hundreds of innocent victims have been murdered and thousands more maimed.

20. As discussed in a September 8, 2006 press release issued by the Department of Treasury, "each year" Iran provided hundreds of millions of dollars to Hezbollah and other terrorist organizations.

21. As concluded in a Treasury Department "Fact Sheet" published on October 25, 2007, between 2001 and 2006 Bank Saderat, which was then owned by the Iranian government, "transferred $50 million from the Central Bank of Iran through its subsidiary in London to its branch in Beirut for the benefit of Hezbollah fronts in Lebanon that support acts of violence."

22. The District Court for the District of Columbia has found that "Hezbollah is an Iranian proxy organization, controlled, funded and operated by Iran … Iran's control over Hezbollah is so far-reaching that [the federal courts have] repeatedly held Iran vicariously liable, under the doctrine of respondeat superior, for actions of Hezbollah." *Stern v. Islamic Republic of Iran*, 271 F.Supp.2d 286, 292 (D.D.C. 2003).

23. Through the months of July and August 2006, with Iran's material support and resources in the form of, among other things, the provision of substantial amounts of money and weaponry, Hezbollah engaged in a prolonged terror attack during which it fired thousands of rockets and missiles at civilian targets in Israel.

24. In a recent decision, the District Court for the District of Columbia found that Iran is liable under FSIA § 1605A for the very same Hezbollah Attack that is at issue here. *See Kaplan v. Central Bank of Iran*, 55 F. Supp. 3d 189, 197 (D.D.C. 2014) ("With respect to the rocket attacks, the Court finds that Iran assisted Hezbollah….most generally by providing the funds for the assistance…").

25.     The *Kaplan* court found that Iran funneled weapons to Hezbollah for its use in the Hezbollah Attack. 55 F. Supp. 3d at 197. And, "Iran and North Korea were together engaged in the production of the M–600 rockets that give Hezbollah the ability to strike at urban centers in central Israel" *Id*.

26.     The *Kaplan* court held that "there can be no doubt that … Iran provided material support to Hezbollah." 55 F. Supp. 3d at 200. And, the Hezbollah Attack was "facilitated" by Iran. *Id*.

27.     The court concluded that Iran was liable for damages resulting from the Hezbollah Attack. *Id*.

**B.     Mayanot Suffered Severe Economic Damages as a direct result of the Hezbollah Attack.**

28.     During and after the Hezbollah Attack enrollment in Mayanot Programs declined precipitously, causing extreme financial losses.

29.     At any given time, the Mayanot yeshiva typically has 80 full time students.

30.     This was so immediately prior to the Hezbollah Attack.

31.     However, by the end of the Hezbollah Attack, enrolment was down to fewer than 20 students.

32.     The women's study program suffered substantial cancellations and withdrawals as well.

33.     The loss of approximately 75% of enrollment for the 2006-7 academic year resulted in lost income and profit to Mayanot in the amount of several hundreds of thousands of dollars.

34. In a typical year, Mayanot conducts Birthright Israel heritage travel programs in Israel for approximately 3200 participants.

35. As a direct result of the Hezbollah Attack, Mayanot suffered cancellations by approximately 50%, or 1600 participants.

36. The cancellations forced Mayanot to break its commitments to its service providers.

37. The cancellations also caused Mayanot to lose approximately $200 in lost profits for each of the 1600 cancellations, or a total of $320,000.

38. Moreover, recruiting for Mayanot's Birthright travel programs is based primarily upon word-of-mouth recommendations from recent participants.

39. With a 50% decline in participation for 2006, Mayanot suffered comparable losses in the aftermath of the Hezbollah Attack.

40. Finally, due to the Hezbollah Attack, Mayanot was forced to cancel its summer program for 2006, with a loss of 50 students each of whom would have generated tuition of $1800. The lost revenues from the cancellation of the summer program totaled approximately $90,000.

**C.     Mayanot's Losses Were Caused by Iran's Conduct**.

41. Iran's provision of money, weapons, and other material support and resources to Hezbollah substantially increased and facilitated Hezbollah's ability to plan, to prepare for and to carry out the Hezbollah Attack.

42. But for Iran's provision of material support and resources to Hezbollah, Hezbollah could not have (a) built and maintained its operational infrastructure for the planning and execution of the Hezbollah Attack (b) paid, trained, transported and sheltered

the terrorist operatives who carried out the Hezbollah Attack, or (c) carried out the Hezbollah Attack.

43. The Hezbollah Attack was enabled, facilitated and proximately caused by Iran's conduct described herein.

44. Mayanot's losses are therefore the direct and proximate result of Iran's conduct.

**CLAIM FOR RELIEF – ACTION FOR DAMAGES UNDER 28 U.S.C. § 1605A(d)**

45. The allegations set forth in the preceding paragraphs are incorporated and re-alleged herein.

46. Defendant Iran provided material support and resources to Hezbollah, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Hezbollah Attack.

47. Other actions have been brought against Iran seeking damages for personal injury and death under 28 U.S.C. 1605A(c) for the same act upon which this action is based. *See e.g., Kaplan v. Central Bank of the Islamic Republic of Iran*, Case Nos. 10-483, 09-646 (RCL), 55 F. Supp. 3d 189 (D.D.C. 2014); *Lelchook v. Islamic Republic of Iran*, Case No. 1:15-cv-13715-JGD (D. Mass).

48. As a direct consequence of the Hezbollah Attack Mayanot suffered severe financial damages.

49. The conduct of Iran caused Mayanot loss of property including loss of income, and other financial losses, and loss of financial support.

50. Iran is liable for the full amount of damages due to Mayanot.

51. The conduct of Iran was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendant and the following relief:

(a) Compensatory damages according to proof;

(b) Punitive and exemplary damages according to proof;

(c) Reasonable attorney's fees, costs, and expenses according to proof; and

(d) Such other and further relief as justice requires.

**JURY DEMAND: PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated: July 12, 2016                                        Respectfully Submitted,

By:     /s/ Asher Perlin
Asher Perlin, Esq.
4600 Sheridan Street
Suite 303
Hollywood, Florida 33021
Tel. 954-284-0900 ext. 102
Fax. 954-284-0747